UNITED STATES of America,

v.

Herbert Johannes STEEL and Alice Jayson, a/k/a Alice Jacobsohn, Defendants.

United States District Court
S. D. New York.
Jan. 20, 1965.

See also 238 F.Supp. 578.

Robert M. Morgenthau, U. S. Atty., for the United States, Michael F. Arm-

strong, Stephen L. Hammerman, Asst. U. S. Attys., of counsel.

Rabinowitz & Boudin, New York City, for defendant Alice Jayson, Arthur Schutzer New York City, of counsel.

WYATT, District Judge.

This is a motion by defendant Alice Jayson, said to be under Fed.R.Crim.P. 12(b), to dismiss the indictment on the ground that it was returned by the grand jury in violation of the defendant's rights under the Fifth Amendment or, alternatively, for an inspection by her or by the Court of the grand jury minutes "to determine whether any evidence was presented to said Grand Jury in connection with its return of said indictment".

On June 13, 1963 an indictment charging Herbert Johannes Steel as a defendant in twenty-three counts was handed up to this Court by a grand jury. Count one charged Steel with conspiracy to violate the Securities Act of 1933 (15 U.S.C. § 77a and following) respecting transactions in unregistered securities of Alaska International Corporation ("Alaska"). Movant Jayson, two other individuals and Alaska were named as co-conspirators in count one but not as defendants. Movant Jayson was referred to in 5 of the 7 overt acts alleged in count one. The remaining counts charged Steel with the following substantive offenses: transportation for sale of unregistered stock of Alaska (15 U.S.C. §§ 77e(a) (2) and 77x), use of the mails to sell unregistered stock of Alaska (15 U.S.C. §§ 77e (a) (1) and 77x), mailing unregistered stock of Alaska for sale (15 U.S.C. §§ 77e(a) (2) and 77x), and making false statements in a matter within the jurisdiction of the Securities and Exchange Commission (18 U.S.C. § 1001). In one of the 8 false statement counts, it was alleged that the false statement referred to movant Jayson.

By letter dated July 3, 1963 Assistant United States Attorney Armstrong requested movant to appear at his office "with respect to" the indictment against Steel. This was an attempt to discuss with movant her testifying voluntarily at the trial of Steel, and the content of that testimony.

Movant, before the indictment against Steel had been returned, had retained Eugene G. Cobert, Esq., as her attorney. After Steel had been indicted and after movant had received the letter from Mr. Armstrong, Mr. Cobert discussed with Mr. Armstrong whether movant would testify voluntarily and whether she would discuss her testimony in advance with Mr. Armstrong. Movant took the position that she would not testify voluntarily and would not have any discussion with Mr. Armstrong; in other words, she refused to cooperate with the government. Mr. Armstrong told Mr. Cobert (and also a second attorney retained by movant) that her status as a co-conspirator but not defendant in the then pending indictment "would undoubtedly be re-evaluated if she continued to refuse to cooperate" (affidavit of Mr. Armstrong). Movant did continue to refuse to cooperate.

The matter was presented to a second grand jury and on August 18, 1964 a second and superseding indictment was handed up. This second indictment—64 Cr. 753—in twenty-two counts names both movant and Steel as defendants. Count one charges movant with conspiracy to violate the Securities Act of 1933 (15 U.S.C. § 77a and following; the "1933 Act") in respect of transactions in unregistered securities and to violate the mail fraud statute (18 U.S.C. § 1341). Counts 2 through 11 charge movant and Steel with substantive violations of the 1933 Act; counts 21 and 22 charge movant alone with making false statements in a matter within the jurisdiction of the Commission (18 U.S. C. § 1001). The securities involved are those of Alaska. Both defendants pleaded not guilty on August 25, 1964.

The present motion to dismiss is based on claims that the indictment was returned in violation of the Fifth Amendment (presumably "without due process of law") in two respects: first, that the

indictment was returned because movant "had declined to be a voluntary witness for the Government" and second, that "no evidence of crime was submitted to the Grand Jury which indicted her" (Memorandum for Motion, page 2).

The *sole* evidence submitted to support these two claims in the statement of Mr. Armstrong that the status of movant as a co-conspirator but not defendant in the first indictment "would undoubtedly be re-evaluated if she continued to refuse to cooperate". There is nothing else.

The absence of any tangible support for the claims made is shown by the affidavit of movant herself:

"* * * it *appears* from the foregoing that I was indicted solely because I declined to be a voluntary witness * * *"

"* * * *it would appear* that the Grand Jury which indicted me did not do so upon the basis of evidence of crime presented to it". (emphasis supplied)

The movant goes on to say why "I draw this conclusion". She relies on (a) that the indictment was returned two weeks after the grand jury had been impanelled and (b) that, since the papers "involved in this case run into the thousands", *"in all likelihood* the second Grand Jury heard no evidence of the alleged crimes, but was *probably* merely advised of my unwillingness to be a voluntary witness for the prosecution. *If* this were the case, I was indicted solely upon the basis of an accusation of noncooperation with the United States Attorney." (emphasis supplied)

The moving affidavit continues with this admission: "I have, of course, no way of knowing what evidence, if any, was adduced before the second Grand Jury".

█ It should be borne in mind that the United States Attorney decides whether to *present* a matter to a grand jury but it is the grand jury *alone* which determines by vote whether to return an indictment; indeed, the United States Attorney may not be present during deliberation or voting by the grand jury. Fed.R.Crim.P. 6(d).

█ It is clear from the moving affidavit, especially the passages quoted and the words underlined, that the motion rests on nothing more than a guess, a speculation, a conjecture.

█ There is a "strong presumption of regularity accorded to the deliberations and findings of grand juries * * *". (United States v. Nunan, 236 F.2d 576, 594 (2d Cir. 1956), cert denied 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957). See also United States v. Johnson, 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943); United States v. Nomura Trading Co., 213 F.Supp. 704, 706 (S.D. N.Y.1963).

█ Mere guessing is not sufficient to overcome the presumption that grand jury action is proper. The reason for this is spelled out in Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956), a case dealing with an indictment returned on hearsay evidence only.

The case at bar is very like United States v. Greenberg, 204 F.Supp. 400 (S.D.N.Y.1962). A defendant moved to dismiss an indictment charging violations of the Securities Act of 1933 on the ground that "improper outside influences were brought to bear on the Grand Jury" namely, that information was given to the grand jury that he had been disbarred by the Securities and Exchange Commission on account of the subject matter of the indictment. (This is much more serious and more capable of prejudice than that on which movant here relies.)

Judge Bryan held that the claims were "unsupported" and thus that the government had no "burden of proving regularity" (204 F.Supp. at 402). Judge Bryan further held that a moving defendant had the burden "to establish by a *clear* and *positive* showing that competent evidence which might justify an indictment was not presented" (204 F. Supp. at 402; emphasis supplied). Judge Bryan further held that even if it were

established that the disbarment was made known to the grand jury, this would not justify dismissal because it still would not show, even "remotely", that "the Grand Jury was moved to indict by anything other than proper and sufficient evidence of probable cause * * *." (204 F.Supp. at 403).

▆▆▆ It is suggested that the reason movant was not indicted by the first grand jury was that the jurors "were of the opinion that the evidence did not establish crime on her part or that her role was so minor as not to justify a prosecution" (Memorandum for Motion, page 4). There is no basis for any such speculation. Movant was named as a co-conspirator by the first grand jury which is itself a finding of probable cause of a violation of law. In any event, and assuming the first and second grand juries were in complete disagreement, this would be no ground for dismissal since adverse action by a grand jury does not bar or limit action, including contrary action, by a subsequent grand jury. United States v. Thompson, 251 U.S. 407, 413–415, 40 S.Ct. 289, 64 L.Ed. 333 (1920). If a second grand jury returns an indictment where a first grand jury returned a no true bill, "this furnishes no basis for drawing the inference that the succeeding grand jury which did return the indictment acted without evidence rationally to support the crime charged. A subsequent grand jury has the undoubted power to inquire into and to indict upon a charge which has been previously considered by another grand jury and which has failed to return an indictment. [¶ in orig.] The fact that a subsequent grand jury to which a matter has been resubmitted has returned an indictment, necessarily carries with it a presumption that additional evidence or evidence sufficient to sustain the indictment was presented." United States v. Schack, 165 F.Supp. 371, 375–376 (S.D.N.Y.1958).

Under the authorities and on principle, the present motion in the case at bar is without merit and is denied.

So ordered.