UNITED STATES of America

v.

Constance THOMAS.

Crim. No. 2018–69.

United States District Court, District of Columbia.

Dec. 8, 1970.

528

Thomas A. Flannery, U. S. Atty., Washington, D. C., for the United States.

Susan M. Chalker, Atty., Public Defender Service, Washington, D. C., for Constance Thomas.

MEMORANDUM OPINION

BRYANT, District Judge.

Defendant moves this Court for an order directing the United States attorney to cease summoning witnesses to his office and paying them twenty dollars for interviews there. The United States attorney denies neither the existence of the practices nor the fact that they are being used in this case. The following is the "summons" sent by the United States attorney to prospective witnesses:

UNITED STATES ATTORNEY FOR THE
DISTRICT OF COLUMBIA

United States Court House
3rd & Constitution Avenue, N. W.
Washington, D. C. 20001

SUMMONS

TO _____

You are hereby notified to appear as a witness at the United States Attorney's Office, on the Third Floor of the United States Court House, at Third Street and John Marshall Place, on Constitution Avenue, N. W., on _____, to assist in the preparation for trial of the case of United States v. _____.

You should contact and confer with the Assistant United States Attorney in charge of this case.

_____
Assistant United States Attorney

_____
Room Number

783–5700, Ext. _____
Telephone Number

If the Assistant cannot be located, please see one of the secretarial employees in _____, extension _____.
<br>Room Number

In opposition to the motion the United States attorney takes the position that this Court lacks jurisdiction to grant the requested order, particularly that such an order would amount to an unwarranted judicial incursion into the operations of the United States attorney's office, operations which of necessity involve a high degree of discretion.

The government's argument falls wide of the mark. The fact is that the Court has pending before it a criminal case. The United States attorney, as the officer authorized to conduct a prosecution before this Court, is, in respect to the acts relating to the prosecution, subject to the proper exertion of the disciplinary powers of the court, Go-Bart Importing Co. v. United States, 282 U.S. 344, 355, 51 S.Ct. 153, 75 L.Ed. 374 (1931). In discussing a motion to compel the United States attorney to return

allegedly illegally seized records, Judge Hough said half a century ago in language that has been much quoted since:

"Attorneys are officers of the court, and the United States attorney does not by taking office escape from this species of professional discipline. Thus power to entertain this motion depends on the fact that the party proceeded against is an attorney, not that he is an official known as the United States attorney." *United States v. Maresca,* 266 F. 713, 717 (S.D.N.Y.1920).

The same point has been made recently by our own court of appeals speaking through Judge, now Chief Justice, Burger, in *Newman v. United States,* 127 U.S.App.D.C. 263, 382 F.2d 479 (1967), a case cited to us by the government:

"An attorney for the United States, as any other attorney, however, appears in a dual role. He is at once an officer of the court and the agent and attorney for a client; in the first capacity he is responsible to the Court for the manner of his conduct of a case, i. e., his demeanor, deportment and ethical conduct; * * *" 127 U.S.App.D.C. at 265, 382 F.2d at 481.

The precise practice at issue in this motion, the summoning of witnesses to the prosecutor's office, has been labelled "unprofessional conduct" by the American Bar Association. American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function 76, (Tentative Draft, March 1970). The commentary is to the following effect.

"The Advisory Committee has noted the practice of some prosecution offices of summoning persons for interviews by means of documents which in format and language resemble official judicial subpoenas or similar judicial process, although the prosecutor lacks subpoena power. *Such practices are improper; they amount to a subversion and usurpation of judicial power.* Absent specific statutory subpoena power, a prosecutor's communication requesting a person to appear for an interview should be couched in terms of a request; it should not simulate a process or summons which the prosecutor does not have power to issue." Standards, *supra,* at 79. (Emphasis added.)

■ The United States attorney does not even claim a subpoena power to compel persons to go to his office for interviews. Fed.R.Crim.P. 17. The "summons" here in question is an offensive document under the A.B.A. Standards, *supra*; and although these standards are not technically binding on the Court, we are convinced that this "summons" is a usurpation of judicial power.

Any lawyer would know that this "summons" is not enforceable and can be safely ignored. A layman cannot be expected to know this, and his reaction upon receiving such a "summons" from an office at the United States Courthouse might well be to take fright and get himself down to the United States Attorney's office on the indicated date solely to avoid the possibility of punishment.[1]

The prosecutorial workload of the United States attorney in the District of Columbia is extremely heavy, and his determination to investigate his cases thoroughly and to interview all prospective witnesses is highly commendable. Nonetheless, in his zeal to investigate he loses sight of the danger that by sending a "summons" to a prospective witness he may cause him not only to appear at his office at the time indicated, but to arrive there in a frame of mind to say what he thinks the United States attorney wants to hear, lest the chastis-

1. It can be noted that in Washington, as in other large metropolitan areas, the incidence of crime is highest in the most deprived sectors of the community, sociologically and geographically speaking.

Thus witnesses, as a generality, are not likely to possess a sophistication such as to make them conversant with the fine points of the subpoena power.

ing power that resides in the United States Courthouse be visited upon him. The danger that these phony summonses will put the recipient too much under the will of the United States attorney is surely inadvertent on the latter's part. The danger nonetheless exists, and the practice ought not be continued.

■ Defendant moves the Court for an order that also would enjoin the United States attorney from paying prospective witnesses a twenty dollar fee when they come to his office for an interview. At oral argument, considerable attention was paid to the question whether there is any specific statutory authorization for the United States attorney to make these payments. The arguments and the Court's own research are inconclusive.[2] There is much to be said for compensating citizens for their loss of work time and inconvenience suffered when they perform their civic duty of providing information helpful to the resolution of a case. Indeed, that Congress shares this view, at least as regards witnesses who actually attend at court, is evidenced by 28 U.S.C.A. § 1821. Trials would be a great deal less efficient and more burdensome than they are if prospective witnesses could not be interviewed before the trial date. The twenty dollar fee paid by the United States attorney is correctly to be viewed as a compensation for the interviewee's lost time, in many cases lost work-time. It is neither improper nor contrary to clear statutory language, and therefore this Court cannot enjoin it.

We nonetheless find disturbing the imbalance in ability to prepare for trial as between prosecutor and defense that arises from the fact that there is no appropriation for the public defender to compensate prospective witnesses who come to *his* office. "A criminal trial is not a game of wits between opposing counsel, the cleverer party, or the one with the greater resources, to be the 'winner'." Levin v. Katzenbach, 124 U.S. App.D.C. 158, 162, 363 F.2d 287, 291 (1966). While proper resolution of this imbalance should be sought in the legislative branch rather than in the trial court, still the United States attorney might well take a hard look at his practice of paying for interviews in the light of the above mentioned considerations.

The motion of defendant is granted insofar as an order is sought directing the United States attorney to cease summoning witnesses to his office; in all other respects it is denied.

### ORDER

Upon consideration of defendant's motion to direct the United States Attorney to cease summoning and paying witnesses for interviews and upon consideration of the opposition thereto and upon consideration of the whole record in the case, oral argument having been heard on November 9, 1970, it is by the Court this 8th day of December, 1970,

Ordered that the United States Attorney shall cease sending to prospective witnesses whom he wishes to interview before the trial date any form which includes the word "Summons" or any derivative thereof or which in its format and language resembles an official judicial subpoena or similar judicial process or which conveys the impression that non-appearance is subject to sanction, and it is,

Further ordered that in all other respects the motion is denied.

2. The "Certificate of U. S. Attorney (U. S. Commissioner)" (defendant's Exhibit B) used to authorize the payments at issue in this motion appears from its wording to have been designed to implement 28 U.S.C.A. § 1821. However, the government concedes in its opposition papers that 28 U.S.C.A. § 1821, authorizing payment of a twenty dollar daily fee to a witness who attends at court or before a United States commissioner or before a person authorized by court order to take his deposition, does not authorize the payments in question here. The government claims reliance, rather, on 28 U.S.C.A. § 524, which in pertinent part provides, "Appropriations for the Department of Justice are available for payment of—(1) notarial fees * * * and compensation and expenses of witnesses and informants * * *"