**UNITED STATES of America, Appellee,**

**v.**

**Mark STRUTTON, Appellant.**

**No. 680, Docket 73–2452.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 17, 1974.

Decided March 27, 1974.

William Epstein, New York City (William J. Gallagher, The Legal Aid Society, New York City, on the brief), for appellant.

George E. Wilson, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., and Peter L. Truebner and S. Andrew Schaffer, Asst. U. S. Attys., on the brief), for appellee.

Before FRIENDLY and MANSFIELD, Circuit Judges, and ZAMPANO, District Judge.*

PER CURIAM:

█ The main question presented on this appeal is whether the appellant, Mark Strutton, at the time of the crime was legally insane under the principles enunciated in United States v. Freeman, 357 F.2d 606, 622 (2 Cir. 1966):

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

Strutton contends his conviction for refusing to report for induction and for failing to keep his local draft board informed of his current address, in violation of 50 U.S.C.A. App. § 462(a), for which he was given concurrent prison terms of one year, should be set aside because the government's proof of sanity was insufficient as a matter of law. We disagree.

At the non-jury trial before the Honorable Edward Weinfeld, United States District Judge, the government introduced evidence that on May 17, 1971, Strutton appeared at the New York induction center pursuant to a valid order to report for induction into the Armed Forces. However, before the induction process was completed, the inductees were given a luncheon recess from which Strutton failed to return, and he thereafter neglected to respond to the inquiries of his local draft board; he also had a prior history of moving about without keeping his local board informed. When Strutton was apprehended as a fugitive, Judge Ryan ordered that he be examined by a psychiatrist, Dr. Gurston D. Goldin, such examination apparently to be directed both to the question of Strutton's competency to stand trial and to that of his legal sanity at the time of the alleged offense; shortly thereafter, and after transfer of the case to Judge Weinfeld, the latter ordered a second psychiatric examination, by Dr. David Abrahamsen, this limited to the question of competency to stand trial in accordance with 18 U.S.C. § 4244. On February 9, 1973, Judge Weinfeld found him incompetent and committed him for treatment under 18 U.S.C. § 4246. After more than two months of therapy at the United States Medical Center for Federal Prisoners in Springfield, Missouri, Strutton was returned to New York for another competency hearing at which it was established without contradiction that he was able to understand the nature of the proceedings against him and to consult with counsel. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). At trial Strutton conceded for all practical purposes the essential elements of the crimes charged except his criminal responsibility at the time of the aborted induction. The record, which as Judge Weinfeld found was sufficient to shift to the government the burden of proving legal sanity beyond a reasonable doubt, amply demonstrates that Strutton for many years was sadly and hopelessly addicted to drugs. Lay and medical expert testimony revealed that he was a "speed freak", a "drifter", and an individual with a "schizoid personality" who was in dire need of continued psychiat-

---

* Of the United States District Court, District of Connecticut, sitting by designation.

ric treatment. In particular, the letter of Dr. Abrahamsen to Judge Weinfeld, which was the chief basis for finding that Strutton was incompetent to stand trial at that time, concluded that "deep down in him [Strutton] does not seem to have been able to realize his responsibility in this case," and that "his contact with reality is superficial and tenuous." Despite this, there was sufficient countervailing evidence to support the trial judge's decision that Strutton fulfilled the *Freeman* requirements when he eloped from the induction center on May 17, 1971. Dr. Goldin, in his earlier letter to Judge Ryan, expressed the only medical opinion relating specifically to Strutton's rationality on the date of the offense. He indicated, on the basis of a clinical interview, that Strutton had "no impairment, as a result of mental diseases or defect, of his ability to appreciate the wrongfulness of his behavior or to conform his behavior to the requirements of law." In addition, Judge Weinfeld relied on Strutton's own admission at trial that "he did not want to be inducted" and the "very detailed and correct answers to the questionnaire made by the defendant" on the day in question, to negate the claim of mental incompetency. To be sure, it would have been far better if Dr. Goldin had been called to the stand and if the government had produced the military psychiatrist who examined Strutton at his pre-induction physical; but the defense apparently stipulated, however foolishly, to admission of Dr. Goldin's letter, and the failure of the government to produce additional witnesses cannot vitiate the force of evidence otherwise sufficient. There is also some validity in appellant's criticism of the fact that Judge Weinfeld gave weight to defendant's demeanor at trial, when Strutton's demeanor at the initial competency hearing, before two months of intensive psychiatric treatment, seems to have impressed the court in quite the opposite direction. Nevertheless, and while the issue is a close one, we conclude that the trial court did not commit error in finding beyond a reasonable doubt that Strutton possessed the requisite intent at the time of the crime. Cf. United States v. Bohle, 475 F.2d 872, 874–875 (2 Cir. 1973); United States v. Sullivan, 406 F.2d 180, 186 (2 Cir. 1969).

■ We further decline Strutton's invitation to reverse his conviction as an indication to the United States Attorney's Office that we disapprove of "callous indictments of pathetic individuals whose acts are harmless." While the prosecutor's decision to seek an indictment in this case may have been a questionable exercise of judgment, we know of no principle that would justify a court in supervising such judgments, except on substantiated claims of racial or similar discrimination. Cf. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Moreover, Judge Weinfeld solicitously weighed all the mitigating circumstances before imposing final sentence. Sentence was on two occasions deferred for several months in order to allow Strutton to seek "useful daily activity" and to obtain help at the Covenant House, a religious residence for wayward and helpless youths. It was only after Strutton's excessive drinking escapades and a conviction for possession of firearms were disclosed to Judge Weinfeld that a sentence of incarceration of one year was imposed.

Judgment affirmed.