UNITED STATES of America ex rel. Agnes SCRANTON, Petitioner-Appellant,

v.

The STATE OF NEW YORK, Respondent-Appellee.

No. 672, Docket 75–2145.

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1976.

Decided March 15, 1976.

---

Eleanor Jackson Piel, New York City, for petitioner-appellant.

Gerald M. Labush, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York County, Peter L. Zimroth and Robert M. Pitler, Asst. Dist. Attys., New York City, on the brief), for respondent-appellee.

Before MEDINA, MULLIGAN and GURFEIN, Circuit Judges.

MEDINA, Circuit Judge:

Petitioner Agnes Scranton appeals from an order of the United States District Court for the Southern District of New York (Richard Owen, *Judge*) entered November 10, 1975, which denied her petition for a writ of habeas corpus. She claims that the failure of the state to prosecute her for some five years after her indictment in January of 1970 deprived her of her constitutional right to a speedy trial and that the indictment must therefore be dismissed.

## I

### *Custody*

In *limine* we must deal with the question whether appellant was sufficiently "in custody" to warrant a federal court to issue a writ of habeas corpus. While we agree with the result arrived at by Judge Owen, we think a brief further discussion will be helpful as this appears to be the first time this particular point of law has come up for decision in the Second Circuit. As was done below, we treat the petition before us as an application under the broader habeas statute, 28 U.S.C., Section 2241.

On January 6, 1970, Mrs. Scranton was indicted in the Supreme Court of the State of New York, New York County, for the murder of her fifteen-month-old daughter. In March, 1970, she was released on $10,000 bail, having been incarcerated since the day of her indictment. Since March 9, 1974, she has been released on parole. For all practical purposes this granting by the New York State courts of "parole" or release on her own recognizance is the equivalent of bail. Release "on parole" was apparently substituted for a bail release because once bail is exonerated in New York, it is not simple to reset it as the entire bail-setting and posting process must be repeated.

Relying primarily on *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), Judge Owen found that Mrs. Scranton met the "in custody" requirements of Section 2241 since she, released prior to trial on bail and later on parole, is subject to restraints tantamount to those borne by Hensley, released on his own recognizance following his conviction, whom the Court found to be "in custody."

The State argues that the restraints suffered by Mrs. Scranton are not sufficiently severe to constitute "custody" for habeas purposes. Unlike the case of *Hensley,* it is said, there is no certainty that Mrs. Scranton will ever be convicted or incarcerated. The State's argument would seem to be predicated on the assumption that the only reason Hensley was "in custody" was that he was subject to the imminent possibility of incarceration pursuant to a sentence imposed after conviction. Thus we are told that it is not the restraint inherent in being "on bail" or "on parole" that is so severe as to merit habeas relief, but rather the imminency of imprisonment after conviction that warrants the issuance of the writ. That is not our reading of the *Hensley* decision.

Hensley, like Mrs. Scranton, was "subject to restraints 'not shared by the public generally * * *.'" 411 U.S. at 351, 93 S.Ct. at 1575, 36 L.Ed.2d at 300, citing *Jones v. Cunningham,* 371 U.S. 236, 240, 83 S.Ct. 373, 375, 9 L.Ed.2d 285, 289 (1963). As the Court in *Hensley* stated, the petitioner "cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice. Disobedience is itself a criminal offense." 411 U.S. at 351, 93 S.Ct. at 1575, 36 L.Ed.2d at 300. Mrs. Scranton is subject to equally burdensome restraints. Under New York Criminal Procedure Law Section 510.40(2) (McKinney's 1975), she may be ordered to appear before the court at any time and is obliged "to render [herself] at all times amenable to the orders and processes of the court." Since her present release is a matter of court discretion, it may be retracted at any time. New York Criminal Procedure Law Section 530.60 (McKinney's 1975). Indeed, just prior to the commencement of a trial on March 4, 1974, Mrs. Scranton was in fact again placed in jail.

While it is true that Mrs. Scranton is not presently incarcerated, "besides physical imprisonment, there are other restraints on. a [woman's] liberty * * * which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Jones v. Cunningham, supra,* 371 U.S. at 240, 83 S.Ct. at 376, 9 L.Ed.2d at 289.

We do not regard the pre-conviction—post-conviction distinction as a meaningful test for determining whether a petitioner is "in custody." Section 2241 contains no requirement, as does 28 U.S.C., Section 2254, that a petitioner be "in custody" pursuant to a judgment as a prerequisite to habeas relief. Nor do we find persuasive the argument that Mrs. Scranton is not "in custody" because she is subject to no greater restraint than any other individual under indictment. It is the validity of that very indictment and the restraint it has occasioned which her petition brings into question. Finally, we do not believe that our conclusion will result in unwarranted or obtrusive intervention by the federal courts in state criminal proceedings. The check on such premature or unwarranted habeas challenges is the requirement that the petitioner shall have exhausted all of her state remedies.

## II

### Exhaustion

■ While 28 U.S.C., Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism. *See Ex parte Royall,* 117 U.S. 241, 252–53, 6 S.Ct. 734, 740–741, 29 L.Ed. 868, 871–872 (1886); *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). It is undisputed that Mrs. Scranton has exhausted her available pre-trial state remedies.

■ The record before us is replete with contradictions and a large miscellany of disputed conversations and other issues of fact. It is not our function nor do we have the power to pass upon these matters. There have evidently been over 50 continuances of the trial. During all these years Mrs. Scranton has apparently been suffering from a fatal disease. One of Mrs. Scranton's claims is that the prosecution did not promptly inform her counsel that there was a witness who could testify that Mrs. Scranton's retarded child had admitted striking the baby before the baby died. And her diligent and highly competent counsel has made every conceivable effort to have the indictment dismissed for failure to provide a speedy trial.

There have been five motions to dismiss the indictment because of the alleged failure to provide a speedy trial, but all of these motions have been denied. No appeals were taken as under New York law an order denying a motion to dismiss an indictment on this ground is not appealable.

Mrs. Scranton also commenced in the Appellate Division of the Supreme Court, First

Department, an Article 78 proceeding, New York C.P.L.R. Section 7801 *et seq.* (McKinney's 1975), in the nature of an application for a writ of prohibition to prevent the prosecutor or the New York courts from proceeding to trial on the murder indictment. This application, based upon denial of her speedy trial right, was denied without opinion in an order of February 28, 1974.

After an Assistant District Attorney who was said to be sympathetic to Mrs. Scranton's plight left the office, the case was set for trial on March 4, 1974, and, as explained in the State's brief, a new prosecutor who was in her sixth month of pregnancy appeared to be ready to proceed. Mrs. Scranton was again placed in prison and the trial commenced. Unfortunately, the new prosecutor collapsed after two or three days of trial and the swearing in of a few jurors. This was said to be because she had the flu. After much wrangling the trial judge declared a mistrial and Mrs. Scranton was again released. The upshot was another Article 78 proceeding, based upon both failure to afford a speedy trial and double jeopardy, which was ultimately decided against petitioner in an order without opinion on April 11, 1974. The two Article 78 proceedings were consolidated and, in the course of time, the New York Court of Appeals held on the merits that there was no double jeopardy, but also held that an Article 78 proceeding did not provide a means of testing out the speedy trial issue. *Matter of Scranton v. Supreme Court of State of New York,* 36 N.Y.2d 704, 366 N.Y.S.2d 417, 325 N.E.2d 876 (1975).

State habeas corpus was also unavailable to Mrs. Scranton because the New York courts have uniformly held that habeas corpus will not lie unless the petitioner is actually in custody. *See People ex rel. Wilder v. Markley,* 26 N.Y.2d 648, 307 N.Y.S.2d 672, 255 N.E.2d 784 (1970).

There were, however, two state remedies available, neither of which Mrs. Scranton chose to pursue. The first of these was to go to trial, raise the speedy trial issue as a defense or by motion to dismiss, and then, after a conviction of murder, raise the speedy trial point again on appeal. *See Watts v. Supreme Court,* 28 N.Y.2d 714, 320 N.Y.S.2d 755, 269 N.E.2d 412 (1971). The other available state remedy, according to New York law, was to plead guilty and raise the speedy trial issue on appeal. See *People v. Blakley,* 34 N.Y.2d 311, 314, 357 N.Y.S. 2d 459, 313 N.E.2d 763 (1974); *People v. Chirieleison,* 3 N.Y.2d 170, 164 N.Y. S.2d 726, 143 N.E.2d 914 (1957). As long as her present lawyer stands by her side, it seems highly improbable that Mrs. Scranton will plead guilty and pursue the latter course, especially as she has from the beginning so steadfastly protested her innocence.

Unfortunately for Mrs. Scranton, we are powerless to help her, unless we violate our trust, as there is no denying the fact that she has not exhausted her state remedies. Perhaps, if Solomon were here to hold the scales, he would say the judgment has been too long deferred. As one of the spiritual qualities of justice is mercy, the New York State authorities may some day be persuaded by the circumstances of this case that they can, without any loss of dignity, on their own motion have the indictment dismissed and call it a day.

There is no occasion to clutter the reports with exhaustive citation of the many opinions written by District and Circuit judges on the subject of federal interference with state criminal proceedings. Standing firmly athwart the path to such interference is Justice Black's brilliant opinion for the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The following part of this opinion, 401 U.S. at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676, forecloses the granting of relief to Mrs. Scranton:

In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is "both great and

immediate." * * * Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

This principle necessarily requires the application of exhaustion requirements in habeas corpus proceedings that raise similar state-federal issues. *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

In our view, the decisions involving two-state situations, *Kane v. State of Virginia,* 419 F.2d 1369 (4th Cir. 1970) and *Chauncey v. Second Judicial District Court,* 453 F.2d 389 (9th Cir. 1971), referred to in the opinion below, furnish no real basis for thinking that *Younger v. Harris* is not directly applicable. In both suits, a prisoner who was in custody in one state after conviction petitioned for habeas in order to obtain a speedy trial in another state of a different criminal charge. *Kane,* however, was decided by the Fourth Circuit before the Supreme Court handed down its decision in *Younger.* Perhaps the full impact of the *Younger* opinion was not yet felt when the Ninth Circuit in 1971 rendered its decision in *Chauncey.* In any case, *Chauncey* is distinguishable since there the state courts had already rejected petitioner's claim on the merits, and the New York courts have not here expressed any view on the merits of Mrs. Scranton's petition. Moreover, it seems to us that the situation has been straightened out in the Ninth Circuit by the more recent holding in *Drury v. Cox,* 457 F.2d 764 (9th Cir. 1972) in which it was held that the rule of *Younger v. Harris* was applicable to a so-called two-state situation. Thus, we think it not likely that the *Kane* and *Chauncey* holdings have any real vitality in view of the decision in *Younger,* and a later decision, *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93

S.Ct. 1123, 35 L.Ed.2d 443 (1973), to which we shall now turn.

Mrs. Scranton relies heavily on *Braden.* In that case the Supreme Court granted the petitioner pre-trial habeas relief finding that he had exhausted his state remedies. His case differs from that of Mrs. Scranton, however, as Braden had sought the habeas writ in order to compel the state to try him, rather than to have his indictment dismissed, on the ground that the state had violated his right to a speedy trial. Braden had already moved for expedition of his trial in the state court and his petition had been denied. Thus, he had no other alternative remaining but to petition the federal court for habeas relief. To assert the denial of his speedy trial right at the trial, or on appeal, would in no way have ameliorated the harm that he sought to remedy, *i. e.,* that the state had refused to try him with due speed. Here, Mrs. Scranton has state remedies available to her to secure the end she seeks. The Court in *Braden* expressly noted the distinction between the case before it and a situation such as we have here, and stated, 410 U.S. at 493, 93 S.Ct. at 1129, 35 L.Ed.2d at 451:

> We emphasize that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.

Having granted a certificate of probable cause for appeal to this Court, Judge Owen also stayed proceedings in the New York County Supreme Court in *People v. Scranton* "pending expeditious review by" this Court. We now vacate this stay and affirm the order appealed from.