Benjamin OSTRER, Plaintiff,

v.

William I. ARONWALD, Robert B. Fiske, Jr., Alan Naftalis, Marvin Sontag, James Killeen, Edward Levi, and the United States of America, Defendants.

No. 76 Civ. 3702.

United States District Court, S. D. New York.

June 21, 1977.

See also, D.C., 434 F.Supp. 379, and 425 F.Supp. 962.

Rosenberg, Baker & Fine, Cambridge, Mass., Arnold Simon, Lynbrook, N.Y., for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Gary G. Cooper, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Defendants William I. Aronwald, Robert B. Fiske, Jr., Alan Naftalis, Marvin Sontag, James Killeen, Edward Levi, and United States of America move for an order pursuant to Rule 12(b), Fed.R.Civ.P., dismissing the complaint in this action. For the reasons hereinafter stated, the motion is granted.

Plaintiff Benjamin Ostrer seeks injunctive relief against certain government offi-

cials and the United States of America. He claims that defendants are using the grand jury process to obtain an indictment against him in order to pressure his father, Louis Ostrer, into testifying about the latter's business associates. Benjamin Ostrer, the complaint indicates, is in a uniquely vulnerable position since he is a recent law school graduate attempting to secure admission to the New York State Bar. Plaintiff asserts that he is a hostage for his father's "cooperation."

The complaint alleges that this action arises out of plaintiff's first amendment right of association, his penumbral·right to private familial relationships, and his fifth amendment right to due process, as well as Rules 6 and 42, Fed.R.Crim.P., and Rule 65, Fed.R.Civ.P. The acts charged are also purported to breach state laws forbidding coercion and extortion, the ethical duties of the defendants, and the public interest in a fair criminal justice system.

The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1346, 1361, and 2241 in addition to the judiciary's inherent supervisory powers over federal courts, federal judicial and quasi-judicial proceedings, grand juries, and officers of the Court. The complaint seeks to enjoin the defendants from presenting any further evidence to the grand jury regarding plaintiff and from obtaining any indictment(s) against him; attempting to retaliate against plaintiff for filing this action; or releasing to the Character Committee of the New York State Bar or to any one else any information adverse to plaintiff. The complaint also asks that the Court discharge the grand jury which has heard evidence against plaintiff, that plaintiff be declared fully immunized concerning alleged crimes, evidence being presented· to, and indictments sought from said grand jury, and that defendants be ordered to cease all unlawful harassment of plaintiff in his lawful activities and associations.

A determination of jurisdiction must first be made. The plaintiff's jurisdictional allegations must, therefore, be examined.

28 U.S.C. § 1361 reads as follows:

Action to compel an officer of the United States to perform his duty

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Traditionally, jurisdiction under this section arises only if the defendant has "a clear duty to perform a non-discretionary act." *Davis v. United States Dep't of HEW*, 416 F.Supp. 448, 451 (S.D.N.Y.1976). Conversely, mandamus is appropriate if the activity sought to be prevented is "so plainly prohibited as to be free from doubt." *Naporano Metal & Iron Co. v. Sec'y of Labor*, 529 F.2d 537, 542 (3d Cir. 1976).

In *Fifth Avenue Peace Parade Committee v. Hoover*, 327 F.Supp. 238, 243 (S.D.N.Y.1971), *aff'd*, 480 F.2d 326 (2d Cir. 1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974), it was stated:

a court must have the benefit of some specific statutes or regulations against which to measure the duties said to have been specifically ignored by the defendant or defendants. Plaintiffs have not made such a showing here. They rest upon the flat assertion that defendants have a duty not to violate the constitutional rights of plaintiffs. Although the proposition cannot be denied, I think that to allow it as a basis for federal jurisdiction under § 1361 would be to stretch mandamus far beyond its proper limits.

Here, plaintiff similarly asserts that defendants have a duty not to violate his civil rights and not to engage in activities which constitute crimes under state law. This Court believes that such assertions do not provide a basis for mandamus jurisdiction.

Plaintiff claims to be "in custody" for purposes of this Court's power to grant a writ of habeas corpus. 28 U.S.C. § 2241. The incidents of this restraint are alleged to include the threat of indictment and the potential harm to plaintiff's career plans. In *Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973), the Supreme Court stated:

The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.

*See United States ex rel. Scranton v. State of New York*, 532 F.2d 292, 293–94 (2d Cir. 1976).

Two useful indicia of custody were suggested by the Court in *Whorley v. Brilhart*, 359 F.Supp. 539, 542 (E.D.Va.1973)

First, there must be present some sort of supervisory control over the person of the petitioner. His conduct, in other words, must be subject in one degree or another to the direction of judicial officers. Second, the existence of an imminent possibility of incarceration without a formal trial and criminal conviction may create such a restraint on liberty as to constitute custody. At the least, such a possibility taken together with even minimum supervisory control would result in a finding of custody. *Hensley v. Municipal Court, [supra]*.

There is certainly no imminent possibility of incarceration present here. Furthermore, plaintiff's conduct is really not subject to the direction of judicial officers nor to their supervisory control as is the behavior of a parolee or one on probation.

In *Furey v. Hyland*, 395 F.Supp. 1356 (D.N.J.1975), *aff'd without opinion*, 532 F.2d 746 (3d Cir. 1976), it was decided that a doctor, convicted, fined and given a suspended sentence, was not "in custody" as a result of disabilities which might result from his conviction. These disabilities were alleged to include the loss of his professional license and damage to his status and reputation. Although the Court acknowledged that, "the stakes may become high for Dr. Furey" 395 F.Supp. at 1361 n. 9, it felt that to create a novel definition of "in custody" for doctors and other licensees would violate equal protection. *See Ed-*

*munds v. Chang,* 509 F.2d 39 (9th Cir. 1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41. Similar reasoning would apply to the nascent lawyer plaintiff in this suit.

Although the definition of "in custody" has clearly broadened over time, it remains a concept with limits. Plaintiff would have this Court go beyond those limits. He is simply not subject to severe or immediate restraint.

■ 28 U.S.C. § 1346 does not provide a jurisdictional basis for plaintiff. § 1346(b) by its terms relates solely to the recovery of "money damages." This is a suit for injunctive relief. Similarly, § 1346(a)(2) permits an award of damages, not injunctive or declaratory relief. *Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) (per curiam). *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973).

■ At the time plaintiff commenced this action, 28 U.S.C. § 1331 provided in pertinent part:

Federal question; amount in controversy:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

Plaintiff claims injury to certain of his constitutional rights, and alleges that his future career plans are threatened. His complaint states that, "[t]he amount in controversy exceeds $10,000, exclusive of interest and costs."

In *Moore v. Betit,* 511 F.2d 1004, 1006 (2d Cir. 1975), the Second Circuit observed:

[T]he proposition that indirect damages and damages which are too speculative do not support jurisdiction . . . has traditionally been applied to damages which are intangible or to damages incapable of reduction to monetary terms such as free speech, child custody and loss of personal liberty. *See e. g. Kiernan v. Lindsay,* 334 F.Supp. 588, 594–5 (S.D.N.Y. 1971). . . .

Federal courts have consistently held that absolute certainty in valuation of the right involved is not required to meet the amount in controversy requirement but rather the requirement is that there be a reasonable probability of an amount in controversy exceeding jurisdictional amount if an amount can be ascertained pursuant to some realistic formula. *See e. g., Lawrence v. Oakes,* 361 F.Supp. 432 (D.Vt.1973); *Scherr v. Volpe,* 336 F.Supp. 882, 885 (W.D.Wis.1971) aff'd, 466 F.2d 1027 (7th Cir. 1972). Conversely, courts should dismiss only when it is clear to a legal certainty that jurisdictional amounts cannot be met. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–9, 58 S.Ct. 586, 82 L.Ed. 845 (1938), *Opelika Nursing Home, Inc. v. Richardson,* 448 F.2d 658 (5th Cir. 1971) on remand 356 F.Supp. 1338, 1341 (M.D. Ala.1973).

The jurisdictional amount requirement is ordinarily satisfied by plaintiff's good faith allegation. The burden of demonstrating that the amount is as he claims falls upon plaintiff when defendant challenges the allegation. *Moore v. Betit, supra* at 1007. Defendants do not appear to contest plaintiff's reliance on § 1331 against the individual defendants.

The Court believes that the value of that which is allegedly at stake—plaintiff's career as an attorney—can be viewed in monetary terms and is sufficient to meet the jurisdictional amount requirement. The Court notes that after this lawsuit was filed 28 U.S.C. § 1331 was amended effective October 21, 1976 to eliminate the $10,000 requirement when an action is brought, "against the United States, any agency thereof, or any officer or employee thereof in his official capacity."

This Court also notes the determination of Judge Coffrin in *Green v. Philbrook,* 427 F.Supp. 834, 836 (D.Vt.1977):

[E]ffective October 21, 1976, Congress amended federal question jurisdiction, 28 U.S.C. § 1331(a), by deleting the $10,000 amount in controversy requirement where the action is brought against the

United States, its agencies, or any officer or employee thereof acting in his official capacity. Pub.L.No.94–574, § 2 (Oct. 21, 1976). The amendment is remedial in nature, *see* H.R.Rep.No.1656, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin. News 1976, p. 6121, and it is intended to fill what has been termed "an unfortunate gap in the statutory jurisdiction of the federal courts," *Wolff v. Selective Service Local Board No. 16,* 372 F.2d 817, 826 (2d Cir. 1967). Thus, we think it proper to apply the amendment retroactively to grant jurisdiction over the defendant Secretary of Health, Education and Welfare even if there was no jurisdiction initially. *Larkin v. Saffarans,* 15 F. 147 (C.C.W.D.Tenn.1883). In any event, were we to dismiss against the federal defendant now, the plaintiffs would be able to renew their action by refiling under the amended statute. The Court can envision no logical reason to require such a Sisyphean process.

Additionally, the Second Circuit has stated in finding jurisdiction under 28 U.S.C. § 1331:

> We take judicial notice of the fact that membership in the bar of the Internal Revenue Service would be worth more than $10,000 to appellant, a certified public accountant; after the district court's decision in this case, moreover, Congress amended 28 U.S.C. § 1331(a) to eliminate the amount-in-controversy requirement in suits against federal employees in their official capacities, Act of Oct. 21, 1976, Pub.L.No.94–574, § 2, 90 Stat. 2721.

*Harary v. Blumenthal,* Dkt.No.76–6151, 555 F.2d 1113 (2d Cir. 1977). Jurisdiction lies in this action under 28 U.S.C. § 1331.

Furthermore, this suit is of unusual concern to the federal courts. The fifth and only non-statutory jurisdictional basis asserted by plaintiff is the Court's, "inherent, equitable and supervisory powers over the Federal Courts, Federal judicial and quasi-judicial proceedings, grand juries, and officers of the Court."

The Court, having determined that jurisdiction exists, will proceed to consider the substantive issues in this action. For purposes of this motion, the facts alleged in the complaint are assumed to be true thus obviating the need for a hearing.

Plaintiff claims that the Court has the authority to control and discipline the government attorneys in charge of the grand jury investigation; to discharge the grand jury; and to grant immunity from prosecution. Numerous cases are cited in support of these broad propositions. Having reviewed these authorities, the Court believes that they do not call for the extraordinary relief demanded by plaintiff.

Courts which have discussed their supervisory powers over prosecutors have not extended them to the lengths which plaintiff has asked this Court to go. The Ninth Circuit, recognizing, "the existence of a duty of good faith on the part of the prosecutor with respect to the court, the grand jury, and the defendant," reversed convictions obtained on indictments the Assistant United States Attorney knew to be based in part on perjured testimony before the grand jury. *United States v. Basurto,* 497 F.2d 781, 786 (9th Cir. 1974). The Fifth Circuit speaks of federal district court, "power to order the suppression or return of unlawfully seized property even though no indictment has been returned," and identified the derivation of this power from, "the inherent authority of the court over those who are its officers." *Hunsucker v. Phinney,* 497 F.2d 29, 32 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). Although plaintiff cites *In re Grand Jury Subpoena to Central States,* 225 F.Supp. 923, 925 (N.D.Ill.1964) for the proposition that, " 'an equity suit to enjoin specific abuses' may be brought against the United States Attorney and his agents," the quotation in fact reads:

> The grand jury, being part and parcel of the judicial branch of government, is subject to a supervisory power in the courts, aimed at preventing abuses of its process or authority. However, inasmuch as the United States Attorney's Office and the Federal Bureau of Investigation are not part of the judicial branch of the govern-

ment they are not in the performance of their executive functions, by reason of our constitutional separation of powers system, subject to the supervisory power of the courts. This is properly as it should be. Under certain circumstances in an equity suit to enjoin specific abuses they might possibly be made parties to a suit brought in the courts, but such rare instances could never be construed as giving the courts supervisory authority over these or any other agencies of the executive branch.

Plaintiff emphasizes *United States v. Thomas,* 320 F.Supp. 527, 529 (D.D.C.1970) in which the United States Attorney's use of a sham "summons" to bring witnesses in for interviews was found to be a "usurpation of judicial power," and was ordered stopped. That situation is hardly comparable to the facts here.

The prosecutor's decision to seek an indictment is subject to judicial scrutiny only on a substantiated claim of "racial or similar discrimination." *United States v. Strutton,* 494 F.2d 686, 688 (2d Cir. 1974). *See United States v. Smith,* 523 F.2d 771, 782 (5th Cir. 1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976); *United States v. Niedelman,* 356 F.Supp. 979, 984 (S.D.N.Y.1973). One primary obstacle to judicial intervention in matters of prosecutorial discretion is the separation of powers doctrine.

> Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.

*Newman v. United States,* 127 U.S.App. D.C. 263, 382 F.2d 479, 480 (1967), *quoted in Russell v. Parratt,* 543 F.2d 1214, 1216 (8th Cir. 1976). The United States Attorney is both an officer of the court and an official of the executive department. It is in the latter capacity that he exercises prosecutorial discretion.

> [T]he problems inherent in the task of supervising prosecutorial decisions do not

lend themselves to resolution by the judiciary. The reviewing courts would be placed in the undesirable and injudicious posture of becoming "superprosecutors."

*Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 380 (2d Cir. 1973).

In *United States v. Steel,* 238 F.Supp. 580 (S.D.N.Y.1965), a defendant moved to have an indictment against her dismissed. She claimed that an Assistant United States Attorney had approached her in regard to testifying in another case. She did not cooperate and he told her, "that her status as a co-conspirator but not defendant in the then pending indictment 'would undoubtedly be re-evaluated if she continued to refuse to cooperate.'" *Id.* at 581. She remained adamant and a new indictment issued naming her as a second defendant. Her motion to dismiss was predicated upon denial of due process in that the indictment was the result of her refusal to testify and in that no evidence of crime had been presented to the grand jury. Her evidence was the statement by the Assistant United States Attorney.

The court denied her the relief requested noting that the grand jury, not the prosecutor, votes an indictment, that a presumption of regularity attaches to grand jury proceedings, and that the movant's speculation as to why she had been indicted did not overcome this presumption. *Id.* at 582. These considerations seem at least as compelling here, where pre-indictment relief is sought.

In *United States v. Cohen,* 231 F.Supp. 171, 172 (S.D.N.Y.1964), a defendant moved for an order restraining the prosecutor "from making or sending any correspondence to the petitioner's clients concerning their income tax returns." The Court said:

> It is concluded, however, that neither under Rule 41(e) nor otherwise may this Court summarily enjoin the United States Attorney from conducting correspondence, whether about income taxes or anything else. This Court has no general supervisory powers over the United States Attorney; he is a public official having independent responsibilities as

such. The motion is denied therefore so far as it seeks to enjoin correspondence of the United States Attorney.

*Id.* This Court similarly does not believe it can prevent the instant prosecutors from communicating with the Character Committee of the New York State Bar as plaintiff asks.

■ Plaintiff invites the Court to fashion the remedy of pre-indictment "discharge" of the grand jury. This invitation must be declined. *Nixon v. Sirica,* 159 U.S.App.D.C. 58, 487 F.2d 700, 790 (1973) is quoted:

Although a court has no authority to order the grand jury to return an indictment (or to refuse to do so), it may exercise control over the grand jury in several significant respects. The court summons and empanels the grand jury and apparently has broad discretion to discharge it for any reason.

In regard to discharge, that court in turn cited Rule 6(g), Fed.R.Crim.P., which reads in pertinent part:

Discharge and Excuse. A grand jury shall serve until discharged by the court but no grand jury may serve more than 18 months.

Also cited was *United States v. Smyth,* 104 F.Supp. 283, 292 (N.D.Cal.1952), whose authority for the power to discharge was again, Rule 6(g), a federal case, *In re National Window Glass Workers,* 287 F. 219, 225 (N.D.Ohio 1922), which stated, "[t]he District Court may discharge a grand jury whenever in its judgment it deems a continuance of the sessions of such a jury unnecessary," an Indiana case, and the following observation:

In a nationally famous incident, Judge Geiger, of the Federal District Court in Wisconsin, discharged a jury to prevent the return of an indictment. He was threatened with impeachment proceedings by Attorney General Cummings, but the grand jury was discharged. New York Times, 1937, December 18, p. 1, col. 3; December 20, p. 1, col. 2, p. 4, col. 6; 1938, January 12, p. 4; January 23, p. 5, col. 1; January 25, p. 6, col. 6; January 26, p. 4, col. 2; January 31, p. 1, col. 2; February 16, p. 7, col. 2.

*United States v. Smyth, supra* at 292 nn. 33 and 34. These authorities hardly recommend discharging the grand jury as an appropriate action.

Plaintiff would also have the Court grant immunity from prosecution. At the pre-indictment stage, this would surely be floundering in the dark. The Court does not know what evidence the grand jury has or will hear, nor does it know with what offenses plaintiff might ultimately be charged. In *Dixon v. District of Columbia,* 129 U.S.App.D.C. 341, 394 F.2d 966 (1968), cited by plaintiff, a traffic charge brought as retaliation was dismissed with no objection by the government. Plaintiff also points to *United States v. McLeod,* 385 F.2d 734 (5th Cir. 1967), in which officials who had pursued a campaign of harassing voting rights workers through prosecutions for violations of local vagrancy, traffic and other laws were ordered to restore those individuals to their *status quo ante.* In neither instance was immunity granted before an offense had been charged.

Interference with the grand jury is by no means a favored course. The Court of Appeals has stressed, "the strong public policy of this Circuit of not permitting disruption of grand jury proceedings absent compelling reasons." *United States v. Grusse,* 515 F.2d 157, 158 (2d Cir. 1975). In a suit involving a witness' invocation of 18 U.S.C. § 3504 the Court observed:

Accusations of misconduct based on unsupported suspicion of patently frivolous contentions should not be deemed "claims" sufficient to require any further inquiry and thus delay orderly proceedings of the grand jury. This conclusion is mandated by the wide latitude historically accorded to grand juries and by the need to avoid delay in grand jury investigations which neither adjudicate guilt or innocence nor proceed in the adversarial tradition of the trial courtroom.

*In re Millow,* 529 F.2d 770, 774 (2d Cir. 1976).

The Supreme Court, too, has opposed interference with the grand jury:

Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. *Cf. United States v. Ryan,* 402 U.S. 530, 532–533, 91 S.Ct. 1580, 1581–1582, 29 L.Ed.2d 85; *Costello v. United States,* 350 U.S. 359, 363–364, 76 S.Ct. 406, 408–409, 100 L.Ed. 397; *Cobbledick v. United States,* 309 U.S. 323, 327–328, 60 S.Ct. 540, 542–543, 84 L.Ed. 783. The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it.

*U. S. v. Dionisio,* 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

Plaintiff insists that meaningful relief can only be granted pre-indictment. The stigmatization which accompanies an indictment cannot be denied. This consequence, however, does not justify the Court in impeding the grand jury. The Court cannot order the grand jury to refuse to return an indictment. *Nixon v. Sirica, supra* at 790; *United States v. Briggs,* 514 F.2d 794 (5th Cir. 1975) is not analogous, as plaintiff argues. That case condemned the practice of naming "unindicted co-conspirators" in an indictment. This tactic publicly and in an official document charged persons with crimes yet gave them no forum to vindicate themselves. The Court observed:

> The acquittal of a named defendant is not wholly curative of the reputational injury suffered by having been charged and tried, but our system permits the residual injury in its pursuit of overall societal interests.

514 F.2d at 799.

Rule 6(e), Fed.R.Crim.P., sets forth a practice of grand jury secrecy. The target of the investigation is thus sought to be protected and his reputation safeguarded before indictment. In this lawsuit, plaintiff has put his status on the public record.

The Court has examined the cases cited by plaintiff to support his contention that a judicially cognizable wrong has occurred here which merits the relief requested. They are unconvincing. The facts of those cases as well as the remedies granted, if any, are very different. Furthermore, they do not support the granting of pre-indictment relief as is sought here. Accordingly, plaintiff has failed to state a claim upon which relief can be granted and defendants' motion to dismiss the complaint is granted.

It is so ordered.