Louis C. OSTRER et al., Plaintiffs,

v.

William I. ARONWALD et al., Defendants.

No. 76 Civ. 3701.

United States District Court, S. D. New York.

Aug. 31, 1976.

Alan M. Dershowitz, Cambridge, Mass., for plaintiff Louis C. Ostrer.

Silverglate, Shapiro & Gertner, Boston, Mass., by Harvey A. Silverglate, Boston, Mass., of counsel, for plaintiff Rita Ostrer.

Wynn & Atlas, New York City, by Jeffrey M. Atlas, New York City, of counsel, for plaintiffs Jack Ostrer and Dina Gelman.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, by William I. Aronwald, Alan R. Naftalis, Washington, D. C., Peter Sudler, New York City, Special Attys., U. S. Dept. of Justice, of counsel, for defendants.

## OPINION

WERKER, District Judge.

On August 19, 1976 this court signed a temporary restraining order prohibiting the defendants from presenting to the Grand Jury any evidence obtained directly or derivatively from unlawful wiretaps and electronic eavesdropping devices and from testimony given by any of the named plaintiffs in this action as defendants under a grant of immunity conferred by the courts of the State of New York. A hearing was held on August 28, 1976 with respect to this matter and the following opinion shall constitute the court's findings of fact and conclusions of law for the purposes of this motion.

The plaintiffs, Louis C. Ostrer, his wife Rita Ostrer, his father Jack Ostrer, and his sister Dina Gelman have filed a civil action against certain government officials and the United States of America. The gravamen of the complaint is that the Government, through illegal and unethical means is seeking to coerce plaintiff Louis Ostrer into providing testimony to a federal grand jury regarding Louis Ostrer's business associates, particularly about those who have "connections with organized crime" and those who are "labor racketeers." The plaintiffs have identified several alleged illegal and unethical means, but this court is concerned solely for the purposes of this motion with the presentation to the Grand Jury of evidence obtained directly and de-

rivatively through illegal wiretaps and through immunized testimony.

The evidence before the court indicates, and the Government concedes, that Louis Ostrer was the subject of a wiretap illegally installed by the New York District Attorney's Office from October 25, 1972 through February 21, 1973. As a result of that wiretap, a massive search and seizure was conducted by that office on February 21, 1973. The plaintiffs allege that this tainted evidence was passed by one Governmental branch to another until it ultimately by one or more routes became the basis of the current grand jury investigation into possible violations of certain Internal Revenue Service and other criminal statutes by the plaintiffs in this action.

Furthermore, in February and March of 1974, Louis Ostrer testified under a grant of transactional immunity conferred by the State of New York before a New York State Grand Jury. The questions involved his business and financial affairs. The plaintiffs allege that the details of this testimony have also been made available to the United States Attorney conducting the current investigation.

In January 1976, the Tax Division of the Department of Justice reviewed the investigation conducted by the Internal Revenue Service and referred the possible prosecution of Louis Ostrer and others to the New York Joint Strike Force for further investigation. The Strike Force was informed of the New York State investigation and of the facts involving the illegally obtained evidence. To prevent any taint of its investigation, the Strike Force took considerable precautions to keep its investigation independent from that which the State of New York and its agencies had conducted. Furthermore, strict guidelines were established for the conduct of the agents involved in the Strike Force investigation and all par-

ticipants were forbidden from discussing the case with anyone from the New York County District Attorney's Office or the United States Attorney's Office for the Southern District of New York. In addition, these participants were forbidden to rely on evidence obtained as a result of the prior illegal wiretap. The Government has provided this court with sworn statements by Alan Naftalis, Special Attorney, Hans G. Seidemann, Revenue Agent, Frederick J. Sweeney, Compliance Officer, Edward I. Martin, Audit Agent, and William I. Aronwald, Special Attorney, denying any use of tainted evidence and any discussions with members of the other governmental authorities in the investigation of this case. The evidence before the court indicates that the Strike Force has made every effort to conduct an independent investigation, and there is no evidence before the court that would indicate that this goal has not been achieved.[1]

■ In deciding this matter, the court must give effect to the general proposition that "[a] grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States v. Stone,* 429 F.2d 138, 140 (2d Cir. 1970), cited with approval in *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). Furthermore, the Supreme Court has recently held that "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio, supra* at 17, 93 S.Ct. at 773. The grand jury's investigation must proceed without

"the evidentiary and procedural restrictions applicable to a criminal trial. Per-

1. While it is not dispositive on this point, the court takes notice of the fact that another judge of this court, the Honorable William C. Conner, has concluded that the Government has provided "sufficient proof that the investigation leading to the present grand jury inquiry was conducted wholly independently of and, indeed, in ignorance of the contemporaneous state court, and that the information gathered by the federal agencies was not derived, even indirectly, from the concededly illegal state wiretap." *In the Matter of a Grand Jury Subpoena of William Kilroy,* M11–18 (Aug. 17, 1976) at 1.

mitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective." *United States v. Calandra,* 414 U.S. 338, 349, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

In the face of these general rules the plaintiffs argue that where a wiretap is concededly illegal and where testimony is given under a grant of immunity, no suppression hearing need be held and the court should, as a matter of law, enjoin the presentation of evidence to the grand jury based on illegally obtained evidence and the immunized testimony. The Government may not use a witness's immunized testimony as a basis for indicting him in another jurisdiction. *United States v. Catalano,* 491 F.2d 268 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974). Furthermore, where the Government has illegally intercepted a witness' communications and the testimony it seeks from that witness is derived from that illegal interception, that witness may refuse to answer those questions where asked by the grand jury and use the illegal interception as a defense in a contempt proceeding. *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

■ However, the case before the court differs in one highly significant respect from *Gelbard.* Here, there is substantial and credible evidence provided by the Government that none of the evidence currently being presented to the grand jury has been derived directly or indirectly from illegally obtained evidence. The court cannot rule as a matter of law that presentation to the grand jury of the evidence obtained by the Strike Force in its investigation must be prohibited on the ground that it is tainted. Any determination by this court as to the propriety of the evi-

dence to be brought before the grand jury would require a hearing with respect to each piece of evidence and scrutiny of every detail of its production. This would be directly contrary to the Supreme Court's ruling that suppression hearings regarding evidence before a grand jury are not the appropriate vehicle for terminating a criminal prosecution.

*In re Persico,* 491 F.2d 1156 (2d Cir.), *cert. denied,* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), is not to the contrary. The Second Circuit held that where evidence being presented to a grand jury is derived from a wiretap and where the orders authorizing that wiretap are in compliance with the statutory requirements, a witness is not entitled to a suppression hearing to test the legality of the surveillance. The witness may refuse to testify only where the wiretap is concededly or on its face illegal. The court relied on the notion that the functioning of the grand jury should not be interrupted to permit a plenary suppression hearing to determine illegality.

That concept is equally applicable in this context. The proceeding before the Grand Jury appears on its face to be proper. The Government has provided substantial testimony that the evidence before the grand jury is not tainted. To make any other determination, this court would be required to conduct an extensive and lengthy suppression hearing. This court will not interfere with the grand jury proceeding to such an extent.

■ Furthermore, the plaintiffs have failed to show the absence of an adequate remedy at law. If, as and when an indictment is returned, the plaintiffs may move to dismiss the indictment and to suppress excludable evidence. Where the petitioner fails to establish the basic requisites for the issuance of a preliminary injunction, the motion must be denied. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

The temporary restraining order is vacated, and the preliminary injunction motion is denied.

During the course of the argument in this matter the government requested that the court refer Alan Dershowitz, Esq. to the Chief Judge of this District under General Rule 5(f) principally upon the grounds that counsel had not honestly stated when he had received a copy of an affidavit made by Nancy Rosner, Esq. in connection with an application to quash a grand jury subpoena with respect to one William Kilroy and also that he had failed to disclose the fact that Judge Conner of this court had issued a memorandum denying the motion to quash. I am satisfied with Mr. Dershowitz' explanation as to the former and I am satisfied that the case before Judge Conner was distinguishable from the present one. The motion to refer is therefore denied.

■ However, counsel for plaintiffs Louis Ostrer and Rita Ostrer do not appear to maintain an office for the practice of law within this district. Their attention is called to Rule 4(a) of the General Rules of this court which states that "No member of the bar of this court not having an office within the Southern or Eastern District of New York [should] appear as attorney or proctor of record in any cause without designating with his initial notice or pleading a member of the bar of either district having an office within the Southern or Eastern District of New York upon whom service of papers may be made." Also, Rule 3(c) permits "[o]nly an attorney or proctor of this court [to] enter appearances for parties." The court expects the attorneys in this matter to comply with these rules.

SO ORDERED.